IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

Victorianne Ferrugia,

      Plaintiff,

v.                                                    Case No.:
                                                      Division:

James Walker,
Team Logistics Co., LLC, and
Mansfield Energy Corp.,

      Defendants.

_____/

### Plaintiff's First Complaint

Comes now, the Plaintiff, Victorianne Ferrugia, by and through the undersigned counsel, and hereby sues Defendants, James Walker, Team Logistics Co., LLC, and Mansfield Energy Corp., and upon information and belief, alleges as follows:

### General Allegations

1.      This is an action for damages in excess of $30,000.

2.      At all times material herein, the Plaintiff, Victorianne Ferrugia, was a resident of Pasco County, Florida.

3.      At all material herein, the Defendant, James Walker, was a resident of Habersham County, GA.

4.      At all times material herein, Defendant, Team Logistics Co. LLC (hereinafter "Team Logistics"), is a corporation doing business in the State of

Florida, transports goods throughout the State of Florida, and has business offices for the transaction of its customary business in Hillsborough County, Florida.

5.      At all times material herein, Defendant, Mansfield Energy Corp., is a corporation doing business in the State of Florida, transports goods throughout the State of Florida, and does business in the State of Florida, including Hillsborough County, Florida.

6.      The transportation of goods in interstate commerce constitutes an ultra-hazardous activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are number of federal regulations, state statutes, industry standards and local ordinances that govern the qualification, training and retention of professional tractor trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of motor carriers, commercial motor vehicles and professional truck drivers.

7.      At all times material hereto, Defendants, Team Logistics and Mansfield Energy Corp., were authorized interstate motor carriers authorized to transport goods in interstate commerce and in the State of Georgia and Florida for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the United States Department of Transportation ("USDOT"), or both. Accordingly, Defendants, Team Logistics and Mansfield Energy Corp., were subject to all state and federal laws, statutes, regulations and industry

standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation Chapter 316 of the Florida Statutes  governing motor vehicles and the Federal Motor Carrier Safety Regulations ("FMCSRs") set subchapters A and B of Chapter III of the Code of Federal Regulations, Title 49 - Transportation.

8.     In return for the privilege to operate commercial motor vehicles on the public highways transporting goods in interstate commerce, motor carriers like Defendants, Team Logistics and Mansfield Energy Corp., must make certain safety related certifications and verifications to the United States Department of Transportation.  In order to obtain operating authority and get a USDOT Number, Defendants, Team Logistics and Mansfield Energy Corp., had to submit a Form OP-1 Application for Motor Property Carrier and Broker Authority or equivalent. Defendants, Team Logistics and Mansfield Energy Corp., had to submit a similar application with the same certifications to obtain authority to operate as a Broker of goods in interstate commerce.

9.     Each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that Defendants, Team Logistics and Mansfield Energy Corp., had access to and is familiar with all applicable U.S. DOT regulations relating to the safe operation of commercial motor vehicles and that Defendants, Team Logistics and Mansfield

Energy Corp., will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

10.     More specifically, each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration that, at a minimum, Defendants, Team Logistics and Mansfield Energy Corp.:

    a.    had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

    b.    can produce a copy of the FMCSRs;

    c.    had and will have in place a driver safety training/orientation program;

    d.    had and will have prepared and maintain an accident register;

    e.    are familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualification requirements;

    f.    had and will have in place policies and procedures consistent with D.O.T. regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

    g.    are familiar with, and had and will have in place a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

h.    must comply with all pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

11.    Representatives of Defendants, Team Logistics and Mansfield Energy Corp., swore under penalty of perjury to comply with the above "Safety Certifications."

12.    At all relevant times, Defendant, James Walker, was a class A licensed motor vehicle operator driving a 2020 Peterbilt semi bearing VIN# 1XPCDP9X9LD722878.  Accordingly, Defendant, James Walker, was subject to all state and federal laws, statutes, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles and tandem trailers.

13.    At all relevant times, the subject Semi was owned by Defendants, Team Logistics and Mansfield Energy Corp., and was being operated by Defendant, James Walker, with consent for the benefit of Defendants, Team Logistics and Mansfield Energy Corp.

14.    At all relevant times, Defendant, James Walker, was employed and/or contracted to perform services for Defendants, Team Logistics and Mansfield Energy Corp., under its US DOT operating authority and was subject to Defendants, Team Logistics and Mansfield Energy Corp.'s control or right to control, such that Defendants, Team Logistics and Mansfield Energy Corp.,

should be considered actual and statutory employers and therefore vicariously liable for Defendant, James Walker's negligence.

15.    At all relevant times, Defendant, James Walker, was operating a commercial motor vehicle for Defendants, Team Logistics and Mansfield Energy Corp., in their affairs and was subject to Team Logistic and Mansfield Energy Corp.'s control or right to control such that Mansfield Energy Corp. should be considered Defendant, James Walker's employer and therefore vicariously liable for Defendant, James Walker's negligence.

16.    Accordingly, Defendants, James Walker, Team Logistics and Mansfield Energy Corp., are personally liable, jointly and severally, in partnership, joint venture or sole proprietorship for the crash and resulting permanent injuries and damages suffered by Plaintiff, Victorianne Ferrugia, claimed herein.

17.    Each Defendant acted in a manner that either alone or combined and concurring with the actions of other Defendant's acts of negligence, directly and proximately caused the incident and the resulting injuries to the Plaintiff, Victorianne Ferrugia.

18.    Plaintiff, Victorianne Ferrugia, seeks all damages permissible under Federal law, including, but not limited to, the conscious pain and suffering, disfigurement and mental anguish she experiences from her injuries.

19.    On October 29, 2020, at approximately 09:30 PM, Plaintiff was operating her 2019 Honda Accord (VIN# 19XFC2F80KE009284), while being

properly restrained, traveling on HWY 129 approaching Jefferson Rd in Clark County, Georgia.

20.    At that time and place, Defendant James Walker was also traveling on HWY 129 approaching Jefferson Rd while operating the Semi for Defendants as set forth herein and in the capacity as agent, servant, workman, and/or employee of Defendants, Team Logistics and Mansfield Energy Corp.

21.    At that time and place, Defendant, James Walker negligently operate or maintained the Semi so that it collided with the Plaintiff's motor vehicle.

22.    Specifically, the Defendant, James Walker, rear-ended the Plaintiff's vehicle.

### Count I – Negligence Against Defendant, James Walker

23.    Plaintiff, Victorianne Ferrugia, realleges and incorporates into this Count all of the paragraphs of the "General Allegations" of this complaint as if the same were more specifically set forth herein, and further alleges:

24.    At all times material hereto, Defendant, James Walker, had non-delegable duties to maintain and operate the Semi in a reasonable and safe manner and to know of and abide by all state and federal laws, statutes, regulations and industry standards governing the safe operation of commercial motor vehicles.

25.    Defendant, James Walker, breached those duties and was negligent and/or reckless in the operation, maintenance and inspection of the Semi in one or more of the following ways:

a.    Failing to maintain proper and adequate control of the Semi so as to avoid causing the Crash;

b.    Operating the Semi in a negligent and unsafe manner; Negligently maintaining the Semi;

c.    Failing to keep a proper lookout while operating the Semi;

d.    Failing to maintain proper speed for the circumstances;

e.    Improperly stopping on an interstate;

f.    Failing to use proper emergency stop and start procedures for stopping on and then reentering traffic on an interstate;

g.    Failing to take reasonable safety precautions to avoid the collision with the Plaintiff's vehicle;

h.    Failing to operate the Semi in accordance with generally accepted safety principles and practices of the trucking industry;

i.    Failing to operate the Semi in a safe and prudent manner in view of the conditions that existed at the time of the subject collision.

j.    Driving recklessly in violation of F.S. §316.192;

k.   Impeding traffic or otherwise violating required minimum speed limits in violation of F.S. §316.183(5);

l.   Failing to pay proper attention while operating the Semi on I-75;

m.   Failing to take proper precautions in the operation of the Semi so as to avoid the collision that occurred with Plaintiff;

n.   Operating the Semi in a negligent, careless and reckless manner without due regard for the rights and safety of other motorists, including Plaintiff;

o.   Failing to exercise due care and caution under all of the existing circumstances;

p.   Failing to have the Semi appropriately lit so that it could be readily seen and avoided in light of the conditions;

q.   Failing to remain alert to the conditions then and there existing at the time of the Crash;

r.   Traveling at a reduced and unsafe rate of speed under the circumstances;

s.   Violating the applicable rules, regulations and laws pertaining to the safe and proper operation of commercial motor vehicles and/or tractor trailer units;

t.   Failing to operate his Semi in accordance with the Federal Motor Carrier Safety Regulations;

u.  Failing to ensure the parts and accessories of the Semi were in good working order in violation of Section 392.7;

v.  Failing to adhere to the requirements with respect to lamps and reflectors and/or conspicuity requirements in violation of Section 393.9; 393.11; 393.13; 393.19; and 393.95;

w.  Failing to properly control his Semi unit in light of the circumstances then and there existing, including night operations while traveling under the speed limit in violation of the conspicuity requirements;

x.  Failing to make necessary and reasonable observations while operating his Semi;

y.  Failing to take evasive action and/or failing to take appropriate and timely evasive action in order to avoid the crash with Plaintiff;

z.  Violating Sections 383.110; 383.111; and 383.113 dealing with required knowledge and skills;

aa.  Violating Section 395.1 with respect to hours of service of drivers;

bb.  Failing to adhere to the amount of driving hours limit;

cc.  Causing the Crash due to being on the road for more than the regulated amount of hours;

dd.   Operating the Semi in an unsafe condition in violation of Section 396.7;

ee.   Failing to inspect the Semi before and during its operation in violation of Section 396.9; 396.11; 396.13; and 396.17;

ff.   Failing to apprise himself of and/or abide by the Federal Motor Carrier Safety Regulations;

gg.   Failing to apprise himself of and/or abide by the regulations and laws pertaining to the operation of commercial motor vehicles;

hh.   Violating both the written and unwritten policies, rules, guidelines and regulations of Pro Transport;

ii.   Consciously choosing to drive under the minimum speed limit at night without proper lamps and/or reflectors and in violation of other conspicuity requirements;

jj.   Consciously choosing to drive over the regulated amount of hours;

kk.   Consciously choosing not to pull his Semi over at an appropriate exit when the regulated limit amount of driving and/or on duty hours were met;

ll.   Consciously choosing to pull his tractor trailer over when he knew it was unsafe to be operating same due to the nighttime conditions and reduced speed;

mm.  Acting with a conscious disregard for the rights and safety of other motorists, including Plaintiff.

26.     Defendant, James Walker, negligently, carelessly, and recklessly breached the duties owed to Plaintiff and violated laws that were intended to protect motorists like Plaintiff.

27.     As a direct and proximate cause of the negligence and/or recklessness of Defendant, James Walker, Plaintiff suffered permanent injuries.

28.     As a result of the negligence and recklessness of Defendant, James Walker, Plaintiff has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will continue to suffer these losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, James Walker, for all damages permitted by Florida law, including costs, prejudgment interest on expenses incurred, and post-judgment interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

## Count II – Negligent Hiring, Training, and Supervision Claim Against Defendant, Mansfield Energy Corp.

29.    Plaintiff, Victorianne Ferrugia, incorporates and realleges into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth herein, and further alleges:

30.    Defendant, Mansfield Energy Corp., had non-delegable duties to ensure that its drivers and vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles.

31.    Upon information and belief, Defendant, Mansfield Energy Corp., failed in the above-mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

a.    Failing to verify that Defendant, James Walker, operated his Semi in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles;

b.    Failing to properly train and instruct its drivers on safe driving, trip planning, and routing;

c.    Negligently supervising Defendant ;

d.    Negligently entrusting Defendant, James Walker, with the Semi in question despite being aware of Defendant 's subpar safety record and poor commercial driving experience;

e.   Having a negligent mode of operation and poor safety culture that created a danger to all motorists exposed to its commercial vehicle drivers including Plaintiff;

f.   Negligently entrusting the Semi, a dangerous instrumentality, to a dangerous and unqualified driver like Defendant, James Walker.

g.   Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including, but not limited to, Defendant, James Walker;

h.   Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that his driving record made him unfit to safely operate a commercial vehicle;

i.   Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that violations of the FMCSA hours of service made  unfit to safely operate a commercial vehicle;

j.   Hiring and/or continuing to employ Defendant, James Walker, despite the fact that  he demonstrated a propensity for driving violations;

k.  Failing to have an appropriate disciplinary policy within the company;

l.  Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that propensity to break the vehicular rules of various states could and/or would put the driving public at risk;

m.  Permitting Defendant, James Walker, to operate the Semi when it knew or should have known that he was not properly qualified and/or trained;

n.  Failing to train and/or properly train Defendant, James Walker, prior to allowing him to operate the Semi;

o.  Allowing Defendant, James Walker, to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

p.  Failing to adopt appropriate employee manuals and/or training procedures;

q.  Failing to enforce both the written and unwritten policies of Defendant, Mansfield Energy Corp.;

r.   Failing to ensure that its employees, drivers and/or agents were aware of and complied with the written and unwritten policies of Defendant, Mansfield Energy Corp.;

s.   Failing to implement and/or enforce an effective safety system;

t.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSR's;

u.   Failing to ensure that its employees, drivers and/or agents complied with the provisions of the FMCSR's;

v.   Failing to ensure that its employees, drivers and/or agents were aware of and complied with the rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

w.   Violating the applicable rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

x.   Failing to monitor and/or regulate its drivers' actions;

y.   Failing to monitor and/or regulate its drivers' hours;

z.   Failed to have an effective auditing system in place to audit its drivers' logs, or if they did have a system in place, they failed to utilize the system properly;

aa.   Failed to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, they failed to use it appropriately;

bb.   Failing to have a policy or mechanism in place to address cumulative fatigue in its drivers;

cc.   Placing more emphasis on profits than on the safety of its drivers and the motor public;

dd.   Knowingly violating federal and state laws regarding the responsibilities of motor carriers and the safe operation of commercial vehicles;

ee.   Failing to act upon and remedy known violations of FMCSA regulation 392.7;

ff.   Failing to act upon and remedy known violations of FMCSA regulation 393.9;

gg.   Failing to act upon and remedy known violations of FMCSA regulation 393.11;

hh.   Failing to act upon and remedy known violations of FMCSA regulation 393.13;

ii.   Failing to act upon and remedy known violations of FMCSA regulation 393.19;

jj.    Failing to act upon and remedy known violations of FMCSA regulation 393.95;

kk.    Failing to act upon and remedy known violations of FMCSA regulation 383.110;

ll.    Failing to act upon and remedy known violations of FMCSA regulation 383.111;

mm.    Failing to act upon and remedy known violations of FMCSA regulation 383.113;

nn.    Failing to act upon and remedy known violations of FMCSA regulation 395.1;

oo.    Failing to act upon and remedy known violations of FMCSA regulation 396.7;

pp.    Failing to act upon and remedy known violations of FMCSA regulation 396.9;

qq.    Failing to act upon and remedy known violations of FMCSA regulation 396.11;

rr.    Failing to act upon and remedy known violations of FMCSA regulation 396.13;

ss.    Failing to act upon and remedy known violations of FMCSA regulation 396.17;

tt.    Failing to act upon and remedy known violations of industry standards;

uu.    Acting in conscious disregard for the rights and safety of the Plaintiff;

vv.    Failing to have appropriate policies and procedures with regard to the hiring of its drivers;

ww.    Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

xx.    Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

yy.    Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers; and

zz.    Habitually and recklessly disregarding state and federal laws and regulations and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably anticipated to cause injury and death to the traveling public and created a danger to all motorists exposed to its unsafe

commercial motor vehicle drivers like Defendant, Mansfield Energy Corp.

32.     As a direct and proximate cause of the negligence and/or recklessness of Defendant, Mansfield Energy Corp., Plaintiff suffered permanent injuries.

33.     As a result of Defendant, Mansfield Energy Corp.'s negligence, carelessness and reckless actions, Plaintiff, Victorianne Ferrugia, has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will continue to suffer these losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Mansfield Energy Corp., for all damages permitted by Florida law including costs, prejudgment interest on expenses incurred and post-judgment interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

## Count III – Vicarious Liability Claim Against Defendant, Mansfield Energy Corp. – Respondeat Superior

34.     Plaintiff, Victorianne Ferrugia, re-alleges and incorporates into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth here, and further alleges:

35.     At all relevant times, Defendant, James Walker, was Defendant, Mansfield Energy Corp.'s, agent, employee, servant and/or independent contractor acting within the course and scope of agency or employment, under the direct control and for the benefit of Defendant, Mansfield Energy Corp.

36.     Therefore, Defendant, Mansfield Energy Corp., is vicariously liable for the negligence of Defendant, James Walker.

37.     As a result of Defendant, James Walker's negligence and carelessness, Plaintiff suffered bodily injury and resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will suffer the losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Mansfield Energy Corp., for all damages permitted by Florida law including costs, prejudgment interest on expenses incurred and post-judgment

interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

**Count IV –Vicarious Liability Claim Against
Defendant, Mansfield Energy Corp. – Dangerous Instrumentality**

38.     Plaintiff, Victorianne Ferrugia, realleges and incorporates into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth herein, and further alleges:

39.     Defendant, Mansfield Energy Corp., permitted Defendant, James Walker, to operate the Semi, a dangerous instrumentality, while transporting goods in interstate commerce, an ultra-hazardous activity, under its U.S. D.O.T. operating authority and is, therefore, is strictly vicariously liable for the negligence of Defendant, James Walker.

40.     As a result of Defendant, James Walker's negligence, carelessness and reckless actions, Plaintiff suffered bodily injury and resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will suffer the losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Mansfield Energy Corp., for all damages permitted by Florida law

including costs, prejudgment interest on expenses incurred and post-judgment interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

### Count V – Negligent Hiring, Training, and Supervision Claim Against Defendant, Team Logistics

41.     Plaintiff, Victorianne Ferrugia, incorporates and realleges into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth herein, and further alleges:

42.     Defendant, Team Logistics, had non-delegable duties to ensure that its drivers and vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles.

43.     Upon information and belief, Defendant, Team Logistics, failed in the above-mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

a.     Failing to verify that Defendant, James Walker, operated his Semi in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles;

b.     Failing to properly train and instruct its drivers on safe driving, trip planning, and routing;

c.     Negligently supervising Defendant ;

d. Negligently entrusting Defendant, James Walker, with the Semi in question despite being aware of Defendant 's subpar safety record and poor commercial driving experience;

e. Having a negligent mode of operation and poor safety culture that created a danger to all motorists exposed to its commercial vehicle drivers including Plaintiff;

f. Negligently entrusting the Semi, a dangerous instrumentality, to a dangerous and unqualified driver like Defendant, James Walker.

g. Failing to properly train, monitor and/or supervise its employees, drivers and/or agents including, but not limited to, Defendant, James Walker;

h. Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that his driving record made him unfit to safely operate a commercial vehicle;

i. Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that violations of the FMCSA hours of service made  unfit to safely operate a commercial vehicle;

j.     Hiring and/or continuing to employ Defendant, James Walker, despite the fact that he demonstrated a propensity for driving violations;

k.     Failing to have an appropriate disciplinary policy within the company;

l.     Hiring and/or continuing to employ Defendant, James Walker, despite the fact that it knew or should have known that propensity to break the vehicular rules of various states could and/or would put the driving public at risk;

m.     Permitting Defendant, James Walker, to operate the Semi when it knew or should have known that he was not properly qualified and/or trained;

n.     Failing to train and/or properly train Defendant, James Walker, prior to allowing him to operate the Semi;

o.     Allowing Defendant, James Walker, to operate tractor trailers in its possession when it knew or should have known that such operation posed a risk of danger to others lawfully on the roadway;

p.     Failing to adopt appropriate employee manuals and/or training procedures;

q.   Failing to enforce both the written and unwritten policies of Defendant, Team Logistics;

r.   Failing to ensure that its employees, drivers and/or agents were aware of and complied with the written and unwritten policies of Defendant, Team Logistics;

s.   Failing to implement and/or enforce an effective safety system;

t.   Failing to ensure that its management personnel and drivers were aware of the requirements and dictates of the FMCSR's;

u.   Failing to ensure that its employees, drivers and/or agents complied with the provisions of the FMCSR's;

v.   Failing to ensure that its employees, drivers and/or agents were aware of and complied with the rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

w.   Violating the applicable rules, laws and regulations pertaining to and governing the safe operation of commercial motor vehicles;

x.   Failing to monitor and/or regulate its drivers' actions;

y.   Failing to monitor and/or regulate its drivers' hours;

z.   Failed to have an effective auditing system in place to audit its drivers' logs, or if they did have a system in place, they failed to utilize the system properly;

aa.   Failed to use a 3rd party vendor to audit their drivers' logs, or if they did use a 3rd party vendor, they failed to use it appropriately;

bb.   Failing to have a policy or mechanism in place to address cumulative fatigue in its drivers;

cc.   Placing more emphasis on profits than on the safety of its drivers and the motor public;

dd.   Knowingly violating federal and state laws regarding the responsibilities of motor carriers and the safe operation of commercial vehicles;

ee.   Failing to act upon and remedy known violations of FMCSA regulation 392.7;

ff.   Failing to act upon and remedy known violations of FMCSA regulation 393.9;

gg.   Failing to act upon and remedy known violations of FMCSA regulation 393.11;

hh.   Failing to act upon and remedy known violations of FMCSA regulation 393.13;

ii.    Failing to act upon and remedy known violations of FMCSA regulation 393.19;

jj.    Failing to act upon and remedy known violations of FMCSA regulation 393.95;

kk.    Failing to act upon and remedy known violations of FMCSA regulation 383.110;

ll.    Failing to act upon and remedy known violations of FMCSA regulation 383.111;

mm.    Failing to act upon and remedy known violations of FMCSA regulation 383.113;

nn.    Failing to act upon and remedy known violations of FMCSA regulation 395.1;

oo.    Failing to act upon and remedy known violations of FMCSA regulation 396.7;

pp.    Failing to act upon and remedy known violations of FMCSA regulation 396.9;

qq.    Failing to act upon and remedy known violations of FMCSA regulation 396.11;

rr.    Failing to act upon and remedy known violations of FMCSA regulation 396.13;

ss.   Failing to act upon and remedy known violations of FMCSA regulation 396.17;

tt.   Failing to act upon and remedy known violations of industry standards;

uu.   Acting in conscious disregard for the rights and safety of the Plaintiff;

vv.   Failing to have appropriate policies and procedures with regard to the hiring of its drivers;

ww.   Failing to follow the written and/or unwritten policies and procedures with regard to the hiring of its drivers;

xx.   Failing to have appropriate policies and procedures with regard to the monitoring of its drivers;

yy.   Failing to follow the written and/or unwritten policies and procedures with regard to the monitoring of its drivers; and

zz.   Habitually and recklessly disregarding state and federal laws and regulations and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles that created a zone and culture of danger that constituted a dangerous mode of operation, which was reasonably

anticipated to cause injury and death to the traveling public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Defendant, Team Logistics.

44.     As a direct and proximate cause of the negligence and/or recklessness of Defendant, Team Logistics, Plaintiff suffered permanent injuries.

45.     As a result of Defendant, Team Logistics' negligence, carelessness and reckless actions, Plaintiff, Victorianne Ferrugia, has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will continue to suffer these losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Team Logistics, for all damages permitted by Florida law including costs, prejudgment interest on expenses incurred and post-judgment interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

## Count VI – Vicarious Liability Claim Against
## Defendant, Team Logistics – Respondeat Superior

46.     Plaintiff, Victorianne Ferrugia, re-alleges and incorporates into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth herein, and further alleges:

47.     At all relevant times, Defendant, James Walker, was Defendant, Team Logistics, agent, employee, servant and/or independent contractor acting within the course and scope of agency or employment, under the direct control and for the benefit of Defendant, Team Logistics.

48.     Therefore, Defendant, Team Logistics, is vicariously liable for the negligence of Defendant, James Walker.

49.     As a result of Defendant, James Walker's negligence and carelessness, Plaintiff suffered bodily injury and resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will suffer the losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Team Logistics, for all damages permitted by Florida law including costs, prejudgment interest on expenses incurred and post-judgment interest,

together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

### Count VII –Vicarious Liability Claim Against
### Defendant, Mansfield Energy Corp. – Dangerous Instrumentality

50.     Plaintiff, Victorianne Ferrugia, realleges and incorporates into this Count all of the paragraphs of the "General Allegations" of this Complaint as if the same were more specifically set forth herein, and further alleges:

51.     Defendant, Team Logistics, permitted Defendant, James Walker, to operate the Semi, a dangerous instrumentality, while transporting goods in interstate commerce, an ultra-hazardous activity, under its U.S. D.O.T. operating authority and is, therefore, is strictly vicariously liable for the negligence of Defendant, James Walker.

52.     As a result of Defendant, James Walker's negligence, carelessness and reckless actions, Plaintiff suffered bodily injury and resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and continuing, and Plaintiff will suffer the losses in the future.

Wherefore, Plaintiff, Victorianne Ferrugia, demands judgment against Defendant, Team Logistics, for all damages permitted by Florida law including

costs, prejudgment interest on expenses incurred and post-judgment interest, together with such other and further relief this Court deems equitable and just, and demands a trial by jury on all issues.

### NOTICE OF DESIGNATION OF PRIMARY E-MAIL ADDRESS
### FOR SERVICE BY ELECTRONIC MAIL

The law firm of The Nurse Lawyer, P.A. files this appearance as attorney of record for Plaintiff, Victorianne Ferrugia, in the above-styled cause, and pursuant to F.R.J.A. 2.516, designates the following e-mail address for service by electronic mail: service@thenurselawyer.com.

Respectfully submitted on October 19, 2021

Megan Cummings, Esquire
The Nurse Lawyer P.A.
201 Alt 19 S
Palm Harbor, FL 34683
Telephone: (727) 807-6182
Facsimile: (727) 848-6182
Fla. Bar No.: 112435
service@thenurselawyer.com
Attorney for Plaintiff